Carr, J.
Two questions were raised, and well argued, in this case, 1. Whether the circuit court decided correctly on the demurrer to evidence? 2. Whether the court ought to have ordered a venire de novo, upon the new evidence laid before it by Kroesen ?
The question on the demurrer is, whether the plaintiff, or rather Moore the relator, produced evidence from which a jury might reasonably draw the conclusion, that the slave in question was his property ? He produced a bill of sale of her to him, admitted to have been executed by Long, dated the 30th March 1824. He proved, that the girl was then in Morlatfs possession, having been hired to him for that year; that at the end of the year, he by his agent demanded the girl of Morlatt, who admitted his right to her, and said he might take her, but did not deliver her up. He proved also by a deputy sheriff, who had a claim on Long for taxes, that Moore claimed her as his property, but said *438 Long could redeem her at any time by paying him the « money. This was all the evidence which is material. It seems to me, that a jury might without impeachment either of their, understanding or their honesty, have drawn from it the conclusion, that the slave was the property of Moore. The bill of sale was strong proof. It stated the girl to be about fourteen years old, and the price 200 dollars cash. Unless this was considered fraudulent, or that the facts proved it a mortgage, it would seem to be conclusive. As to fraud, I see no badge of that, except that possession did not follow the sale; and this a jury might thiuk satisfactorily explained by the fact, that the girl was then in the possession of Morlatt who had hired her, and that so soon as his hiring ended, Moore demanded her. Then, did the evidence prove this a mortgage ? There is nothing that looks that way, except the declaration of Moore, that Long had “ a right to redeem, or could redeem, the slave at any time by paying him the money.” The witness says he did not know, whether Moore meant that such was the understanding at the time of the sale, or not; and a jury, feeling the same doubt, might well have decided, that such a declaration ought not to destroy the effect of a bill of sale under seal, absolute upon its face, and purporting to be for a fair and adequate price paid in hand. Upon the demurrer, therefore, I cannot say that the court erred.
But the more important question remains: Did the court err in refusing a venire de novo, upon the new evidence? This evidence consisted of a bond of Moore to Long, with a condition, that whereas Moore had on the same day bought the negro girl of Long about fourteen years old, for which he had paid him 200 dollars, Moore should deliver her to Long on the 1st April 1825, upon Long’s paying him the sum of 200 dollars with interest from 30th March 1824, the date of the bond. I shall take it for granted, that the excuse tendered for not producing this bond at an earlier date, was sufficient. The bond bears equal date with the bill of sale, and manifestly forms a part of that transaction. What character does it give to it ? Does it prove it a mortgage, or *439 a conditional sale 1 Upon this point, I think, rests the ques-1 1 ' ' 1 tion whether the court erred or not, in refusing the new trial, That there is a difference between mortgages and conditional sales, both reason and authority tell us. In mortgages the estate is at all times redeemable, until a foreclosure passes, or a dereliction is presumed from length of time. In conditional sales, the time of performing the condition must be strictly observed. “ It must often happen in disquisitions of this sort” (says president Pendleton, in Robertson v. Campbell & Wheeler, 2 Call 429.), “ that there will be difficulty in drawing the line between those two sorts of conveyance. The great desideratum, which this court has made the ground of their decision, is, whether the purpose of the parties was to treat of a purchase, the value of the commodity contemplated, and the price fixed ? Or whether the object was the loan of money, and a security or pledge for the repayment, intended 1 The former was the case in Chapman v. Turner; the latter in Ross v. Norvell. In the case before us, looking into the bill of sale, the defeasance and the demurrer to evidence, we find no evidence shewing any proposition for a loan of money, and the taking security for its return. The bill of sale is in the common form. The defeasance calls it a sale: its language is, “ whereas the said Moore did buy a negro girl &c. for which he gave 200 dollars &c.” And Moords declaration about the power to redeem, stated in the demurrer, being made before the twelve months given for the repayment of the 200 dollars had elapsed, may, without much straining, be referred to that privilege. Certainly, it proves nothing like a loan of money and security for its return. Again, where nothing but a loan and security are intended, the sum lent ordinarily bears no proportion to the subject pledged; because neither party contemplates the price and value of the subject, or its changing hands. The lender wants ample security, such as no change of times or circumstances can affect: the borrower has no reason to object to this, because he knows he can at any time redeem, by paying the actual sum borrowed with its interest. But where a sale is intended, though a conditional *440 one, the value of the commodity is contemplated, and the price fixed. So in the case before us, the girl was considered to be worth 200 dollars, and that price was given; a price which seems to have been fairly adequate to the value of the commodity; for in March 1824, when sold by Long to Moore, she was about fourteen years old; and in August 1825, she was sold by the marshal for 233 dollars. But further, there is no proof in the cause that shews the slightest obligation on Long to repay the 200 dollars. The bill of sale certainly imports no such obligation, for that speaks simply of a sale out and out. The defeasance does not, for that is a bond executed by Moore, binding himself to return the slave, if Long on 1st April 1825, should pay the 200 dollars with interest: it gives Long the privilege, but imposes no obligation. So Moore’s declaration was, that Long could redeem by repaying the money, not that he was bound to repay. Hence, it is evident that Moore risked the life of the slave: ■ if she had died the next day, Moore’s 200 dollars were gone, for Long in that case would never choose to exercise his privilege. This is a most important consideration, in fixing and applying to particular cases, the distinction between mortgages, where the party may redeem in twenty years, and conditional sales, where the time fixed must be observed. President Pendleton, in Chapman v. Turner, 1 Call 293. says, with his usual force and clearness, “ the reason for holding vendors to this strictness in conditional sales, applies with every degree of weight to the case of slaves in this country. They are a perishable property, and may die the next day: if they should not, however, and are males, they may be very profitable, or if females, they may by their children increase .the stock. Now, can it be imagined, that any vendor could be so warped by interest, as to suppose, he might lie by until, in event, the men had earned profits greatly exceeding the principal and interest, or the women borne several children, and then expect to perform the condition, when the purchaser had all the meantime risked their lives? If there be such a vendor, I am sure he will receive no countenance from a court of equity.” *441 It was suggested that the stipulation for interest on the 200 dollars during the twelve months, evinces that this was a loan of money, and that the interest in addition to the profits was exorbitant. I think not: it was an open stipulation on the face of the bond, leaving it perfectly optional with Long to pay the money or not; and it will hardly be deemed exorbitant, when it is considered that the slave was hired out for nine of the twelve months; that, during this time, the vendee risked her life, while the vendor received her hire, which hire, for these nine months, would exceed the twelve months interest on the 200 dollars. There are several cases in our books on this subject. Chapman v. Turner, Robertson v. Campbell (before mentioned), Robertas adm'r v. Cocke, 1 Rand. 121. And comparing this case with those, and taking the distinctions laid down in them all, I feel well satisfied, that this must be pronounced a conditional sale. The case of Conway’s ex'ors v. Alexander, 7 Cranch 218. is also a very strong one upon this subject.
Taking this as a conditional sale, ought the court to have granted a new trial ? This is a motion always addressed to the sound discretion of the court; and, unless it is satisfied, that the justice of the case requires it, it will not send the parties to another trial. If this was a conditional sale, it became absolute, and discharged of all condition, after the 1st April 1825. The slave was then the absolute property of Moore, and the execution was not levied on her by the marshal, till the August afterwards. I think the court, under this view of the subject, was right in refusing the new trial. The judgment should be affirmed.
Cabell, J.
If there was any doubt, on the demurrer to evidence, whether this was a conditional sale or not, that doubt is entirely removed by the evidence produced on the motion for a new trial, which clearly proves, that the transaction was a conditional sale and not a mortgage. I concur, that the judgment should be affirmed.
*442 Tucker, P.
I concur in the opinion, that Moore’s agreement of the 30th March, 1824, shews that the contract was a conditional sale by Long to him; and that Long not having complied with the condition, his right was forever concluded. Therefore, whether the judgment on the demurrer to evidence was right or not, as the document produced on the motion for a new trial, clearly proves the right of Moore, the new trial ought not to have been granted: the verdict and judgment are according to the right of the case. I am also of opinion, that there was a sufficient possession in Moore. Until the expiration of the year’s hiring, no actual possession could have been taken by him; and immediately on the expiration of it, possession was demanded, and Morlatt no longer holding under Long, and assenting to deliver up the slave at any moment to Moore, his possession from that time was Moore’s possession. At least, it was not Long’s ; and so the- possession was not left with the grantor.
Judgment affirmed.